**CV 12                     5864**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X                    Civil Action No.

TASHMAYA GAY,

                                        Plaintiff,                    **COMPLAINT**
                                                                     **JURY TRIAL DEMANDED**

                    -against-

THE CITY OF NEW YORK, POLICE                          **BRODIE, J.**
COMMISSIONER RAYMOND KELLY, FIRST
DEPUTY COMMISSIONER RAFAEL PINEIRO,
CHIEF OF DEPARTMENT JOSEPH ESPOSITO,
DEPUTY INSPECTOR ELVIO CAPOCCI,
AND JOHN DOE POLICE OFFICERS,

                                        Defendants.
-----------------------------------------------------------------X

        Plaintiff, by her attorneys, Bader Yakaitis & Nonnenmacher, LLP complaining of, the

Defendants, respectfully sets forth and alleges the follows:

                            PRELIMINARY STATEMENT

        1.      This is a Civil Rights action in which the Plaintiff seeks relief for Defendants'

violation, under color of state law, of her rights, privileges and immunities secured by The Civil

Rights Act of 1871, 42 U.S.C. Sections 1983 and 1985, the First, Fourth, Fifth, Eighth and

Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the

State of New York.

        2.      The Plaintiff, Tashmaya Gay brings this action under 42 U.S.C. Sections 1983 and

1985 and related state laws seeking compensatory and punitive damages and attorney's fees under

42 U.S.C. Section 1988 for the Defendants' violation of her rights afforded by the United States and

New York Constitution and under the laws of The State of New York.

        3.      Defendants, The City of New York, the individually named Defendants and John

Doe Defendants, the exact number of which is unknown at this time, acting individually and in their

3

official capacities, jointly and severally, did deprive the plaintiff of her liberty.

4.    John Doe Police Officers, the exact number of which is unknown at this time acting individually and in their official capacity jointly and severally did cause the plaintiff to be placed in a zone of danger resulting in both physical and emotional harm.

5.    Defendants, the City of New York, the individually named Defendants and John Doe Defendants, the exact number of which is unknown at this time, acting individually and in their official capacity jointly and severally did cause the plaintiff to be falsely arrested, falsely imprisoned, assaulted and battered.

6.    The individually named Defendants and the "John Doe" Defendants being employees of the City of New York violated Plaintiff's Civil Rights, caused her serious personal injury, emotional harm and deprived her of her liberty.

7.    The incident occurred on September 5, 2011.

8.    The incident began on the corner of Franklin Avenue and Park Place, Brooklyn, New York in the vicinity of a perpetrator who was standing in front of 637 Park Place, Brooklyn, New York.

9.    The incident concluded when the Plaintiff was released from police custody on September 6, 2011.

10.    Defendant Raymond Kelly was the Police Commissioner of the New York City Police Department and as such was a superior and supervising officer of the police officers involved in the incident described in this complaint.

11.    Defendant Rafael Pineiro was the First Deputy Commissioner of the New York City Police Department and as such was a superior and supervising officer of the police officers involved in the incidents described in this complaint.

12.    Defendant Joseph Esposito was the Chief of the Police Department and as such was a superior and supervising officer of the police officers involved in the incidents described in this

4

complaint.

13.     At the time of this incident, Defendant Elvio Capocci was the commanding officer of the 77th Precinct and as such was a superior and supervising officer of the police officers involved in the incidents described in this complaint.

14.     Yet to be named John Doe Police Officers assigned to the 77th Precinct were involved in the incidents described in this complaint.

15.     Yet to be named John Doe Police Officers were supervisors of the police officers involved in the incidents described in this complaint.

16.     John Doe, Commanding officer was a supervising officer at this Precinct when this incident occurred and is a superior officer of the officers involved in this incident.

17.     Plaintiff seeks compensatory and punitive damages. Plaintiff also seeks an award of attorney fees and costs, and for such other and further relief as the court deems just and proper.

JURISDICTION

18.     The Court has jurisdiction over plaintiff's claims under 42 U.S.C. Sections 1983 and 1985 pursuant to 28 U.S.C. Section 1331 and Section 1342(3).

19.     The jurisdiction of this Court is invoked pursuant to the provisions of Title 28, United States Code Section 1343(3) and (4), this being a suit in equity which is authorized by law, Title 42, United States Code, Sec. 1983, to be brought to redress the deprivation under color of state law, statute, ordinances, regulations, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States or by any Act of Congress providing for equal rights of citizens. The rights here sought to be redressed are rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and Title 42, United States Code, Sections 1981, 1983 and 1985 as hereinafter more fully appears and The Constitution of the State of New York.

20.     This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to

5

28 U.S.C. Section 1367.

## PRE CONDITIONS TO PLAINTIFF'S STATE LAW CLAIMS

21.    A notice of claim was filed on behalf of the plaintiff with respect to her causes of action which occurred on September 5 2011 setting forth the time when, the place where and the manner in which this incident occurred. Due to a clerical error and inadvertence, this notice of claim put the date of incident as September 15, 2011.

22.    On October 14, 2011 the plaintiff filed an amended notice of claim on the comptroller's office of The City of New York which contained the correct date of incident.

23.    On February 21, 2012 the plaintiff testified at a statutory hearing in compliance with Section 50H of the General Municipal Law.  More than thirty (30) days have elapsed since the presentation of these claims and the Defendants have not requested a physical examination of the Plaintiff pursuant to General Municipal Law Section 50H, the same having been waived by the Defendants.

24.    This action is being commenced within the time limitations set forth in all applicable Federal and State Laws and Statutes.

## VENUE

25.    Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. Section 1391(b)(2), in that this is the judicial district in which the events giving rise to this claim occurred.

## JURY DEMAND

26.    Plaintiff demands a trial by jury in this action on each and every one of her claims pursuant to the seventh amendment to The United States Constitution and Fed. R. Civ. P. 38.

## NATURE OF PROCEEDINGS

27.    This is a proceeding for compensatory and punitive damages owing to the plaintiff as a result of violations of her Civil Rights under the First, Fourth, Eighth and Fourteenth

Amendments to the Constitution of the United States and under Federal Law, particularly Title 42 of The United States Code, Section 1983, 1985, Title 18 of The United States Code, Section 1965(e), Title 18 of The United States Code, Section 1965(a), Title 18 of The United States Code, Section 1962 and Title 28 of The United States Code, Section 1367(a).

PARTIES

28.    Denise Gay was a citizen of the United States and was at all times relevant herein a resident of the State of New York having her residence in Brooklyn, New York.

29.    Denise Gay was the mother of the Plaintiff Tashmaya Gay.

30.    Denise Gay raised the plaintiff Tashmaya Gay from her birth to the date of this incident.

31.    Tashmaya Gay was at all times hereinafter mentioned, a citizen of the United States.

32.    At all times hereinafter mentioned, the plaintiff was a resident of the state of New York and resided in Brooklyn, New York.

33.    Defendant The City of New York is a Municipal Corporation created and authorized under the laws of the State of New York.

34.    The City of New York is authorized by law to maintain a police department which acts as its agent in the area of law enforcement.

35.    The New York City Police Department is an agency and/or department of The City of New York and acts on its behalf in the area of law enforcement.

36.    Defendant The City of New York maintained the 77th Precinct located at 127 Utica Avenue, Brooklyn, New York.

37.    Defendants Raymond Kelly, Rafael Pineiro, Deputy Inspector, Joseph Esposito, and John Doe Supervisors were responsible for the practices, policies and customs of the New York City Police Department, as well as for the hiring, screening, training, supervising, controlling, retaining and disciplining of the persons employed by the New York City Police Department.

7

38.    Defendant Raymond Kelly is and was, at all times relevant to this complaint, the Commissioner of the New York City Police Department and is a final policy maker for purposes of the Police Department's policies, practices and customs.

39.    As Commissioner of the New York City Police Department, Raymond Kelly was, at all times relevant to this complaint, responsible for the practices, policies and customs of the Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of officers who worked within the precincts.

40    As the First Deputy Commissioner, Rafael Pineiro was a commanding officer of the various precincts and was a final policy maker for purposes of the precincts policies, practices and customs.

41.    As the First Deputy Commissioner, Rafael Pineiro was at all times relevant to this complaint responsible for the practices, policies and customs of the New York City Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of Officers who worked at precincts.

42.    Chief of Department Joseph Esposito was a commanding officer of the New York City Police Department and was a final policy maker for purposes of its precinct's policies, practices and customs.

43.    Defendant Deputy Inspector Elvio Capocci was a commanding officer of the New York City Police Department and was a final policy maker for purpose of the 77th Precinct policies, practices and customs.

44.    As a Deputy Inspector in command of the 77th Precinct, Elvio Capocci was at all times relevant to this complaint responsible for the practices, policies and customs of the New York City Police Department and its precincts and was responsible for the hiring, screening, overseeing,

8

training, supervising, controlling, retaining and disciplining of officers who worked at the 77th Precinct.

45.     As the Chief of Department, Joseph Esposito was at all times relevant to this complaint, responsible for the practices, policies and customs of the New York City Police Department and its precincts and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of officers who worked within the precincts.

46.     John Doe Defendants were at all times mentioned superior officers at the 77th Precinct and at all times relevant to this complaint were responsible for the practices, policies and customs of the New York City Police Department and was responsible for the hiring, screening, overseeing, training, supervising, controlling, retaining and disciplining of Officers who worked at the 77th Precinct.

47.     On September 5, 2011 The City of New York employed unknown "John Doe" Police Officers who were assigned to the 77th Precinct and were involved in this incident.

48.     The John Doe Defendants were at all times relevant to this complaint, employed by the City of New York as police officers, supervisors, and/or commanding officers.

49.     These John Doe Defendants included individuals who conspired to and/or acted in concert and/or did engage in the violation of plaintiff's rights described herein, or who failed to protect the plaintiff from violations of her constitutional rights.

50.     On September 5, 2011 the City of New York employed the aforementioned individually named defendants and John Doe police officers who were agents, servants and/or employees of the City of New York and New York City Police Department.

51.     The individually named Defendants and yet to be named John Doe Defendants were at all times mentioned acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or City of New York.

52.     These Defendants were also acting within the scope of and in furtherance of their

9

employment with the City of New York and The New York City Police Department.

53.    At all times relevant herein, each of the individually named and the yet to be named John Doe Defendants acted under color of law in the course and scope of his or her duties and functions as an agent, employee, servant and/or officer of The City of New York and/or the New York City Police Department in engaging in the conduct described herein.

54.    At all times relevant herein, the individually named Defendants and the yet to be named John Doe Defendants have acted for and on behalf of The City of New York and/or The New York City Police Department, and incidental to the lawful pursuit of their duties as officers, agents, employees and/or servants of The City of New York and/or New York City Police Department.

55.    At all times relevant herein, the individually named Defendants and unknown John Doe Defendants violated clearly established constitutional standards under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of which a reasonable police officer and/or public official under his or her respective circumstances would have known to be so violative.

STATEMENT OF FACTS

56.    On September 5, 2011 Denise Gay resided within Apt. 2L at 633 Park Place, Brooklyn, New York.

57.    On September 5, 2011 the Plaintiff Tashmaya Gay lived with Denise Gay at 633 Park Place, Brooklyn, New York.

58.    On September 5, 2011 at approximately 9:40 p.m. Denise Gay was sitting on the steps leading to and from 633 Park Place, Brooklyn, New York.

59.    On September 5, 2011 at approximately 9:40 p.m. Tashmaya Gay was standing on the corner of Park Place and Franklin Avenue with friends and relatives.

60.    At approximately 9:40 p.m. on September 5, 2011 a fight broke out in the vicinity of 637 Park Place, Brooklyn, New York.

10

61.    This dispute involved Leroy Webster and Eusi Johnson.

62.    This dispute took place in front of uniformed police officers who stood on the corner of Park Place and Franklin Avenue and watched the dispute unfold.

63.    During this dispute, Leroy Webster shot and killed Eusi Johnson in front of 637 Park Place, Brooklyn, New York.

64.    This shooting took place in front of uniformed police officers who stood and watched this incident from the corner of Park Place and Franklin Avenue.

65.    This shooting occurred in part because the police officers present failed to intervene prior to shots being fired.

66.    After Leroy Webster fatally shot Eusi Johnson, uniformed police officers began to shoot in the vicinity of Leroy Webster at 637 Park Place, Brooklyn, New York.

67.    The uniformed police officers shot more than 50 rounds in the direction of Leroy Webster who was standing outside of 637 Park Place, Brooklyn, New York.

68.    As Denise Gay was standing on the steps of 633 Park Place, she was shot in the head by a police officer.

69.    Denise Gay was shot as she attempted to get her daughter Tashmaya Gay and others safely into the building.

70.    After being shot, Denise Gay fell on top of Tashmaya Gay who made it into the building.

71.    As Denise Gay lay mortally wounded on top of Tashmaya Gay, Tashmaya Gay attempted to comfort her.

72.    Denise Gay responded to Tashmaya Gay's attempts to comfort her.

73.    As Tashmaya Gay was comforting Denise Gay, a uniformed police officer entered the building and forcefully moved Tashmaya Gay from Denise Gay.

74.    This police officer forced Tashmaya Gay from Denise Gay.

11

75.     At this point, Denise Gay was still alive.

76.     The plaintiff Tashmaya Gay was then taken against her will away from Denise Gay.

77.     The uniformed police officer physically and forcefully dragged Tashmaya Gay up two flights of stairs and ignored her pleas to remain with Denise Gay.

78.     As Tashmaya Gay was being dragged up the steps, she observed another uniformed police officer drape a whit sheet over Denise Gay.

79.     Denise Gay was still alive when the sheet was placed over her body.

80.     While Tashmaya Gay was out of sight, another uniformed police officer physically removed the bullet from Denise Gay's head.

81.     Denise Gay was still alive when the bullet was removed from her head.

82.     Tashmaya Gay was able to get away from the police officer who dragged her up the stairs.

83.     Upon returning to Denise Gay, Tashmaya Gay observed what appeared to be brain matter in the area of Denise Gay's body.

84.     At that time, Tashmaya Gay was once again forced back upstairs by a police officer.

85.     Tashmaya Gay was then forcefully escorted to her apartment where she remained against her will.

86.     Tashmaya Gay was restrained by a police officer while she was in her apartment.

87.     Tashmaya Gay was subsequently forced by uniformed police officers to the roof of 633 Park Place.  She was then forced to cross over to the roof of 637 Park Place and then down to the first floor where she existed 637 Park Place.

88.     Tashmaya Gay was then taken against her will to the 77th Precinct where she remained for more than twelve hours.

89.     While at the 77th Precinct, uniformed police officers tried to get her to say that the bullet that killed Denise Gay was from the gun of Leroy Webster.

12

90.    After more than twelve hours in police custody, Tashmaya Gay was finally released from the 77th Precinct on September 6, 2011.

91.    As a result of this incident the plaintiff was knowingly held in custody and deprived of her freedom.

## AS AND FOR A FIRST CAUSE OF ACTION
### FOR FALSE ARREST

92.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "91" as if fully set forth herein.

93.    The plaintiff was falsely arrested by the John Doe and Jane Doe Police Officers.

94.    The plaintiff was arrested by the John Doe Police Officers without probable cause and without a warrant.

95.    That the aforesaid arrest was caused by the defendants, its agents, servants and employees, including but not limited to the police officers without a warrant and without any reasonable cause or belief that plaintiff was in fact guilty of any crime.

96.    That the aforementioned officers intended to confine plaintiff; plaintiff was conscious of the confinement; plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

97.    That by reason of the false arrest of plaintiff, the plaintiff was subjected to great indignities, humiliation and ridicule and was greatly injured in her credit and circumstances and was prevented and hindered from performing and transacting her necessary affairs and was caused to suffer much pain in both mind and body.

98.    The aforementioned police officers intentionally and without the right to do so, arrested the plaintiff who was aware of the arrest and did not consent to it.

99.    Plaintiff's arrest was unlawful and was made without justification.

13

100.    Based on the facts and circumstances presented, a reasonably prudent person would not believe that plaintiff committed a crime.

101.    By reason of the aforementioned, the plaintiff suffered physical damages, great mental anguish and was deprived of her constitutional rights.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT

102.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "101" as if fully set forth herein.

103.    Following her arrest, the defendants falsely imprisoned the plaintiff.

104.    The defendants intended to confine the plaintiff.

105.    The plaintiff was conscious of the confinement.

106.    The plaintiff did not consent to the confinement.

107.    The confinement was not privileged.

108.    By reason of the aforementioned, the plaintiff suffered physical harm, great mental anguish and was deprived of her constitutional rights.

## AS AND FOR A THIRD CAUSE OF ACTION FOR ASSAULT

109.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "108" as if fully set forth herein.

110.    On April 18, 2011 in the course of being falsely arrested, the plaintiff was assaulted by the aforementioned agents, servants, and/or employees of the defendants The City of New York and The New York City Police Department.

111.    During the course of this unlawful arrest the plaintiff was subjected to the excessive

14

use of force.

112.    During the course of her arrest, the aforementioned police officers intentionally placed the plaintiff in apprehension of imminent harm and offensive contact.

113.    During the course of this unlawful arrest the plaintiff was the victim of police brutality.

114.    During the course  of her arrest, the aforementioned police officers intentionally caused the plaintiff to become concerned that they were about to cause her harm and that they were about to subject him to offensive contact.

115.    The aforementioned officers had the real and/or apparent ability to bring about that harm and contact.

116.    The plaintiff reasonably believed that harm and contact was about to occur.

117.    By reason of the aforementioned, the plaintiff suffered physical harm, great mental anguish and was deprived of her constitutional rights.

AS AND FOR A FOURTH CAUSE
OF ACTION FOR BATTERY

118.    Plaintiff repeats and reiterates all of the allegations contained in paragraphs "1" through "117" as if fully set forth herein.

119.    On September 5, 2011 in the course of being arrested, the plaintiff was battered by the aforementioned police officers who were employed by The City of New York and New York City Police Department.

120.    During the course of her unlawful arrest, the aforementioned police officers intentionally touched the plaintiff without her consent, and caused her offensive bodily contact.

15

121.    During the course of her arrest, the aforementioned police officers used excessive force.

122.    A reasonable person would conclude that the contact was offensive, it was done with the intent to harm the plaintiff and the contact offends a reasonable sense of personal dignity and/or was wrongful.

123.    Defendants use of force was not justified and was done willfully and maliciously.

124.    Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights.

125.    The plaintiff was the victim of police brutality.

126.    Said use of excessive force deprived plaintiff of the constitutional right to bodily security and liberty under the Fourteenth Amendment to the United States Constitution and amounted to an unreasonable physical seizure of plaintiff under the Fourth Amendment to the United States Constitution and constituted cruel and unusual treatment under the Eight Amendment to the United States Constitution.

127.    By reason of the aforementioned, the plaintiff suffered physical damages, suffered great mental anguish and was deprived of her constitutional rights.

AS AND FOR A FIFTH CAUSE OF ACTION<br>
FOR VIOLATION OF CIVIL RIGHTS

128.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "127" as if fully set forth herein.

129.    The aforesaid officers of The City of New York and New York City Police

16

Department were acting as agents, servants and/or employees of The City of New York and New York City Police Department.

130.    The aforesaid officers were acting within the course and scope of their employment.

131.    The aforementioned acts of each of the defendants were under color of statutes, ordinances, regulations, custom and usage of the State of New York.

132.    The aforementioned acts of each of the defendants deprived plaintiff of the privileges and immunities guaranteed to plaintiff as a citizen of the United States, by amendments IV, V, VII and Section I of amendment XIV of the Constitution of the United States and by the Constitution of the State of New York.

133.    As a direct and proximate result of the defendants' actions, plaintiff was deprived of rights, privileges and immunities secured to her under the Constitution and laws of The State of New York and The United States, including, but not limited to her rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C Section 1983.

134.    The aforementioned acts of the defendants constituted cruel and unusual punishment of plaintiff and as such violated amendment VIII to the Constitution of the United States and of the State of New York.

135.    By reason of the foregoing, the John and Jane Doe defendants are liable to plaintiff pursuant to Title 42 of the United States Code, including but not limited to Sections 1981, 1983 and 1985 thereof.

136.    By reason of the aforementioned the plaintiff suffered physical damages, suffered great mental anguish and was deprived of his constitutional rights.

AS AND FOR A SIXTH CAUSE OF ACTION
FOR VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

137.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "136" as if fully set forth herein.

138.    All of the acts and omissions by the named and unnamed individual police officers described were carried out pursuant to overlapping policies and practices of The City of New York and New York City Police Department which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of The City of New York and New York City Police Department.

139.    Defendant The City of New York and New York City Police Department, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

140.    The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well settled and widespread customs and practices of The City of New York and New York City Police Department, which were and are implemented by members of its police department:

(a)    Members of the 77th Precinct are encouraged and/or allowed by their supervisors to physically brutalize suspects and arrestees without consequence – i.e. without fear of reprimand, discipline or even re-training by the Department;

(b)    New York City Police Officers, including the 77th Precinct engage in systemic and ubiquitous perjury, both oral and written, to cover-up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates.  They did so and do so with the knowledge and approval of their supervisors, commanders and Police Commissioners who all:

(i)    tacitly accept and encourage a code of silence wherein police officers refused to report other officers misconduct or tell false and incomplete stories designed to cover for and/or falsely exonerate accused police officers; and

(ii)    encourage and/or fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil right violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians; and

18

(c)    The City of New York and New York City Police Department with the knowledge, approval and encouragement of Police Commissioners, fail to properly train, supervise and/or discipline officers concerning the constitutional rights of individuals in their care and custody.

141.    The Defendants established a custom, policy and/or practice of encouraging, approving and/or tolerating the New York City Police Department's use of excessive force and acts of misconduct against civilians, especially those civilians who are minorities and subsequent attempts to conceal such actions by failing to adequately train, supervise and discipline its agents, employees and officers.

142.    The Defendants were deliberately indifferent to the use of improper procedures in the detention and arrest of civilians, especially those civilians who are minorities and established a custom, policy and/or practicing of encouraging, approving and/or tolerating the use of said improper procedures by the New York City Police Department and subsequent attempts to conceal such actions by failing to adequately train, supervise and discipline its agents, employees and officers.

143.    The defendants' actions were undertaken under the color of law and would not have existed but for said defendants' use of their official power.

144.    The supervisors and policy making officers of defendants, as a matter of policy, were deliberately indifferent to said practices and have failed to take steps to terminate the above detailed practices and have failed to discipline or otherwise properly supervise the individuals engaged in such practices.

145.    Defendants have failed to properly or effectively train their agents, servants and/or employees with regard to proper constitutional and statutory limits on the exercise of their authority, and such failures continue to this day.

19

146.    Defendants have sanctioned the policy and practices heretofore described through its deliberate indifference to the effect of such policy and practices upon the constitutional rights of plaintiff and others similarly situated.

147.    The Defendants' motivations were in contravention of the United States Constitution and the Constitution of the State of New York.

148.    The City of New York and New York City Police Department had a policy of encouraging abuse and assaults or of ratifying same by systemic deficiencies in disciplining officers or in the investigation of complaints against officers.

149.    The foregoing acts, inaction, omissions and systemic failures are customs and policies of the municipal defendants which have caused its police officers to believe that determination of the rights to use force and the amount of allowable legal force was within their discretion and that complaints of the use of excessive force would not be honestly or properly investigated, with the foreseeable result that officers would be likely to use improper force.

150.    The existence of the foregoing unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy making officers and officials of The City of New York and New York City Police Department including its Police Commissioner.

151.    Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy making officers and officials of The City of New York and New York City Police Department including its Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and insert sanctions and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or custom upon the constitutional

20

rights of persons in their care and custody.

152.    As a result of the aforesaid violation of Plaintiff's rights, she sustained injuries and damages previously described in this complaint.

153.    As a direct and proximate result of the aforesaid acts, inaction, omissions and systemic failures the individually named officers used excessive force against the plaintiff.

154.    By reason of the aforementioned the Plaintiff suffered physical damages, great mental anguish and was deprived of her constitutional rights.

<u>AS AND FOR A SEVENTH CAUSE OF ACTION</u>
<u>FOR VIOLATION OF 42 U.S.C. SECTION 1985(3)</u>

155.    Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs "1" through "154 as if fully set forth herein.

156.    The Defendants are liable under 42 U.S.C. Section 1985 (3) for conspiring to violate plaintiff's rights guaranteed by the aforementioned amendments to the United States Constitution.

157.    The aforementioned defendant officers conspired, planned and agreed to treat plaintiff in the manner previously described for the purpose of depriving her, either directly or indirectly, of equal protection of the laws and/or of equal privileges and immunities under the United States Constitution and the New York Constitution.

158.    The actions and conduct taken against the plaintiff was done in furtherance of their conspiracy.

159.    As a result the plaintiff suffered physical injury, emotional harm, was subject to cruel and unusual punishment in violation of the 8th Amendment to the United States Constitution and was deprived of her constitutional rights as previously described.

160.    The defendants' conspiracy was motivated by plaintiff's race.

161.    The existence of the foregoing unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and

21

policy making officers and officials of The City of New York and New York City Police Department including its Police Commissioner.

**AS AND FOR A EIGHTH CAUSE OF ACTION**
**FOR FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. SECTION 1983**

162.    Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs "1" through "161" as if fully set forth herein.

163.    Members of the New York City Police Department have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the police department employing unjustified and excessive force against a civilian or an arrestee.

164.    The aforementioned named and unnamed officers were present while the plaintiff was being assaulted, battered and falsely arrested.

165.    The use of force against the plaintiff was obviously excessive and unjustified under the circumstances yet the other officers present failed to take any action or make any effort to intervene, halt or protect the plaintiff from being physically brutalized.

166.    Defendant's violation of plaintiff's constitutional rights by failing to intervene in the clearly unconstitutional use of force against the plaintiff resulted in the injuries and damages set forth above.

**AS AND FOR A NINTH CAUSE OF ACTION**
**INDIVIDUAL SUPERVISORY LIABILITY – 42 USC SECTION 1983**
**AGAINST ALL DEFENDANT SUPERVISORS**

167.    Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs "1" through "166" as if fully set forth herein.

168.    Defendants' supervisors were, at all relevant times, supervisory personnel in the New York City Police Department, with oversight responsibility for the training, instruction, supervision and discipline of the named and unnamed individual police officers who deprived

22

plaintiff of her federal constitutional rights.

169.    The conduct of the officers and their prior experience was so notorious that the supervising defendants knew or should have known of the likelihood of harm to the plaintiff or someone similarly situated.

170.    These supervisory defendants failed to intervene to prevent the actions taken against the plaintiff.

171.    These supervisory defendants were negligent in failing to take meaningful action to prevent the actions taken against the plaintiff which resulted in the deprivation of plaintiff's constitutionally guaranteed rights.

172.    The individual supervisor defendants knew or should have known that the named and unnamed police officers were conducting unreasonable and retaliatory actions against the plaintiff aimed at harming her and depriving her of her constitutionally guaranteed rights.

173.    The individual supervisory defendants participated in conduct aimed at harming the plaintiff and depriving her of her constitutionally guaranteed rights.

174.    The individual supervisory officers either condoned or looked the other way at the prior conduct and experiences of the aforementioned officers.

175.    The individual supervisory officers were personally involved in either ordering or failing to take preventative and remedial measures to guard against, plaintiff's constitutional deprivations.

176.    The supervisory defendants created the atmosphere at the precinct which created opportunity for the actions against plaintiff to take place.

177.    The supervisory defendants knew, or in the exercise of due diligence, should have known that the actions taken against plaintiff by the John and Jane Doe officers were likely to occur.

178.    The failure of the individual supervisory defendants to train, supervise and/or

23

discipline the named and unnamed individual police officers defendants with respect to the constitutional rights of arrestees amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to the plaintiff.

### AS AND FOR AN TENTH CAUSE OF ACTION
### NEW YORK STATE CONSTITUTIONAL VIOLATIONS

179.    Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs "1" through "178" as if fully set forth herein.

180.    The aforementioned conduct of the named and unnamed officers violated the protections guaranteed to the plaintiff by the New York State Constitution, Article 1, Sections 6, 8, 11 and 12 including but not limited to the right to be free from unreasonable seizure of their person, including excessive force.

181.    Defendants deprivation of plaintiff's rights under the New York State Constitution resulted in the injuries and damages suffered by the plaintiff.

### AS AND FOR A ELEVENTH CAUSE OF ACTION
### NEGLIGENCE

182.    Plaintiff repeats each and every allegation contained in paragraphs "1 through "181" as if fully set forth herein.

183.    The defendants, their agents, servants or employees acted negligently, carelessly and recklessly in the care and treatment given to the plaintiff during her arrest.

184.    The individual defendants by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts, failed to perform their duties as a reasonably prudent and careful police officer, detective and/or supervisor would have done under similar circumstances.

185.    The negligent actions of the individual defendants directly and proximately caused plaintiff's injuries and damages as set forth above.

24

186.    The Defendants' negligence was proximate cause of plaintiff's damages.

## AS AND FOR A TWELFETH CAUSE OF ACTION
## ZONE OF DANGER

187.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "186" as if fully set forth herein.

188.    That on September 5, 2011, the decedent DENISE GAY, was lawfully present at the premises located at 633 Park Place, County of Kings, City and State of New York.

189.    That on September 5, 2011,  the decedent DENISE GAY, was shot and killed by defendants, JOHN DOES-Police Officers as yet unidentified, while acting as agents, servants and/or employees of the defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

190.    That on September 5, 2011, the aforementioned shooting was performed knowingly, intentionally and willfully, and without reason or provocation which resulted in the death of the decedent plaintiff, DENISE GAY.

191.    That on September 5, 2011, defendants, JOHN DOES-Police Officers as yet unidentified, who committed the aforementioned shooting upon the decedent DENISE GAY, were acting within their scope of employment with the defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

192.    That on September 5, 2011, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, including but not limited to JOHN DOES-Police Officers as yet unidentified, negligently unreasonably discharged their firearms shooting multiple times in the vicinity of the decedent DENISE GAY, at the aforesaid location and striking and killing the decedent.

193.    The plaintiff Tashmaya Gay was present when the decedent Denise Gay was shot by police officers.

25

194.    That the Defendants through their carelessness, negligence and recklessness put the plaintiff Tashmaya Gay, at the same place and time, in danger of death or injury.

195.    That Tashmaya Gay was in danger of death or injury while lawfully being at 633 Park Place.

196.    That Tashmaya Gay was contemporaneously aware that Denise Gay was shot in the head and seriously wounded.

197.    That Tashmaya Gay was in the same zone of danger as the decedent Denise Gay and observed the terror and horror of the incident.

198.    That as the result of this incident, the plaintiff suffered both physical and emotional danger.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### NEGLIGENT RETENTION AND HIRING

199.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "198" as if fully set forth herein.

200.    The aforesaid occurrences took place by reason of the Municipal Defendants' negligent training of the aforesaid police officers.

201.    The aforesaid occurrences took place by reason of the Municipal Defendants' negligent hiring and retention of the aforesaid police officers.

202.    The Municipal defendants, their agents, servants or employees acted negligently, carelessly and recklessly in hiring and/or retaining the individually named defendants in that said individual defendants were or should have been known to be employees who abused and misused their position, who were abusive or who acted intentionally and/or recklessly toward the public. The Defendants were further negligent in failing to discipline or retain these officers.

203.    The defendants, their agents, servants or employees acted negligently, carelessly and recklessly in supervising and/or disciplining the individually named defendants in that said individual defendants were or should have been known to be employees who abused and misused

26

their position, who were abusive, or who acted intentionally and/or recklessly toward the public

204.    By reason of the foregoing the plaintiff was seriously injured.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

205.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "204" as if fully set forth herein.

206.    The actions of the defendants in assaulting and battering the plaintiff were outrageous and beyond any norms acceptable to society.

207.    Defendants acted with the desire and intent to cause plaintiff emotional distress, or acted under circumstances known to them which made it substantially certain that they would cause such emotional distress.

208.    Defendants acted with utter disregard of the consequences of their actions.

209.    As a result of the aforesaid, plaintiff sustained injuries and damages previously described in this complaint, including intentional infliction of emotional distress.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

210.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "209" as if fully set forth herein.

211.    The individually named police officers and John Doe officers, by their aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
## RESPONDEAT SUPERIOR

212.    Plaintiff repeats each and every allegation contained in paragraphs "1" through "211" as if fully set forth herein.

213.    The Municipal Defendants are vicariously responsible for the actions of the

27

individual defendants under the doctrine of Respondeat Superior.

## PUNITIVE DAMAGES

214.    Plaintiff will be seeking punitive damages against each of the named police officers.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all defendants:

(a)    A declaration that Defendants violated plaintiff's Federal Civil Rights;

(b)    Compensatory damages for the physical and emotional injuries suffered by plaintiff by reason of defendants unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(c)    Punitive damages against the individual defendants;

(d)    Attorneys fees;

(e)    The costs and disbursements of this action; and

(f)    For such other, further and different relief as is just and proper under the circumstances.

Dated:    New York, New York
          November 26, 2012

Yours, etc.

JOHN J. NONNENMACHER, ESQ.
BADER, YAKAITIS & NONNENMACHER, LLP
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, Suite 7210
New York, New York 10118
(212) 465-1110
Jnonnenmacher@bynlaw.com

28

## V E R I F I C A T I O N

STATE OF NEW YORK
COUNTY OF NEW YORK

The undersigned, being an attorney duly admitted to practice in the Eastern District of the

State of New York, affirms under the penalties of perjury; that I am one of the attorneys for the

plaintiff(s) in the within action.

That I have read and know the contents of the foregoing summons and complaint and that

the same is true to my own knowledge, except as to the matters therein stated to be alleged upon

information and belief, and as to those matters I believe it to be true.

This verification is made by affirmant and not by the plaintiff(s) herein because the

plaintiff(s) is/are not within the county where affirmant maintains his/her office.

This verification is based on information furnished to affirmant by the plaintiff(s) is this

action and information contained in affirmant's file.

Dated:        New York, New York
              November 26, 2012

JOHN J. NONNENMACHER, ESQ.

30